# *Ex Parte* Lower.

## *Carrying Concealed Weapons.*

(Decided May 9, 1912. 59 South. 611.)

*Statutes; Local Law; Publication; Constitutional Provision.*—
The posting clause of the Constitution (sec. 106) requires that notice be posted during a period of four weeks or twenty-eight days prior to the introduction of a local bill in the legislature; the word "a" in the clause "once a week for four consecutive weeks" being used in the sense of "in each," so that where the notice was published in a newspaper once a week in each of four consecutive weeks, the

constitutional requirement was complied with, although full twenty-eight days did not intervene between the first publication and the introduction of the bill.

Certiorari to Court of Appeals.

Ernest Lower was convicted of carrying concealed weapon, and appealed to the Court of Appeals of Alabama where the judgment of conviction was affirmed. See *Lower v. The State,* 3 Ala. App. 122; 57 South. 500. He brings certiorari to review the judgment of the Court of Appeals. Certiorari denied.

ROSCOE CHAMBLEE, for appellant. The Act creating the Birmingham Court of Common Pleas was a Local Act, and did not have the notice required by section 106, Constitution 1901, by publication once a week for four successive weeks.—*Flood v. Kirven,* 113 Wis. 673; *Finlayson v. Peterson,* 67 N. W. 953; *Lyon v. Hunt,* 11 Ala. 295; *City of Ensley v. Simpson,* 166 Ala. 366; *State, ex rel. v. McGough,* 118 Ala. 159; 58 Neb. 734; 16 Barb. 346; 23 How. Pr. 516; 12 C. C. A. 505; 86 N. W. 227; 2 Words & Phrases, 1437; 16 How. 610.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, and A. LEO OBERDORFER, for appellee. It conclusively appears that notice of publication appeared once in each week for four consecutive weeks of the intention to apply to this enactment, and hence, sec. 106, Constitution 1901, was substantially complied with, nothwithstanding, twenty-eight full days had not elapsed from the first publication to the date of the introduction.—House Journal 1903, p. 2360; *Childress v. Shepherd,* 142 Ala. 390; *Dudley v. Fitzpatrick,* 143 Ala. 165; *Larkin v. Simmons,* 155 Ala. 276; *City of Ensley v. Simpson,* 166 Ala. 380; *Blue v. Everett,* 145 Ala. 104.

SAYRE, J.—This case has been brought here by a writ of error to the Court of Appeals. The earnest insistence of the plaintiff in error upon his view of the point at issue renders it proper that we while concurring in the conclusion reached by the Court of Appeals, should add something to what it has had to say on the subject.

Plaintiff in error insists that the act of April 20, 1911, establishing the Birmingham court of common pleas (Local Acts 1911, p. 371), was not passed in the due observance of section 106 of the Constitution of 1901. The journal of the Senate shows that the bill in question was introduced into that branch of the Legislature on March 22, 1911. The proof of notice spread upon the journal shows that publication of the intention to apply for the passage of the act had been published in a newspaper printed in the county of Jefferson "once a week for four consecutive weeks, on to wit, February 24, March 3, 10, and 17, 1911," thus disclosing a publication for 26 days before the introduction of the bill. Section 106 of the Constitution provides: "No * * * local law shall be passed * * * unless notice of the intention to apply therefor shall have been published * * * which notice shall * * * be published at least once a week for four consecutive weeks, in some newspaper published in such county or counties, or if there is no newspaper published therein, then by posting the said notice for four consecutive weeks at five different places in the county or counties prior to the introduction of the bill." The contention for plaintiff in error is that the notice required by the Constitution cannot be perfected in less than 28 days.

We shall not attempt a review of all the adjudicated cases which have been cited pro and con. None of them

adjudge the meaning of an entire arrangement of words, such as is found in our Constitution. We feel at liberty to dispose of the question upon our own reasonable interpretation of the Constitution.

So far as the posting clause of the Constitution is concerned, no plausible reason can be assigned for holding that it means anything other than that notice must be posted during a period of 4 weeks, or 28 days, before the introduction of the bill. It is not necessary to determine what meaning the use of the word "consecutive" adds to this clause, or whether it complements at all the sense of the words in connection with which it is used at this point. It is safe, however, to say that there is no reason for supposing that this clause contemplates repeated postings during successive weeks, and therefore that the original is the only posting contemplated, and that it must antedate the introduction of the bill by at least 4 weeks or 28 days. Now, the phrase "for four consecutive weeks" occurs in both the posting clause and in the preceding clause, which provides for notice by newspaper publication; and, if no disturbing considerations be found in the context, it would be natural to infer that it was intended to convey the same meaning in both places. That would result from a common rule of interpretation. But there is nothing in the nature of the subject-matter provided for which requires uniformity in time any more than uniformity in the means of notice. The framers of the Constitution had a perfectly free hand in the matter. They preferred notice by newspaper publication. That method of notice was made exclusive, where possible. They may have considered that a longer period of notice by posting was required to produce that desired publicity which was provided for by the requirement of a shorter period in the ordinary case of publication in

the newspapers. So that, if a difference in context, viewed in the light of these considerations, suggests a difference in the meaning of the phrase as used at these different places, another rule of interpretation, also of frequent application, would demand that these considerations be weighed; and the fact that the collocation of words is repeated affords no overwhelming reason against assigning to it a somewhat different meaning in its different places and connections.

"At least once a week for four consecutive weeks" is the phrase by which the Constitution prescribes the extent of that publication which must be made in a newspaper. Nothing is more common than the prepositional use of "a" as meaning "in each," as when we say, to quote the illustration given in Webster's New International Dictionary, "twenty leagues a day." Again, "for" frequently implies duration of time. It is so used in the clause providing for notice by posting  It was held to have been so used in *State v. Cherry County,* 58 Neb. 734, 79 N. W. 825, cited by plaintiff in error, where the phrase was "for four weeks." But it also means "to the number of," and it is used to indicate equality or proportion between numbers when related or compared, as, "for one poet there are a dozen poetasters." Webster's International. And this would seem to be its meaning when used in connection with a requirement of consecutive weekly publications. If, then, we make the constitutional phrase to read, "at least once in each week to the number of four weeks which must be consecutive," we do not at all change the grammatical structure of the phrase, nor in the least impair or add to its sense; but the suggested change serves to bring into sharper relief the fact that, in providing for the advertisement of local bills in newspapers, the framers of the Constitution have employed

language which measures the time which must elapse between the first insertion of the newspaper notice and the introduction of the bill by the number of intervening weekly insertions. It is evident that a publication may be had, within the letter of the requirement, by four consecutive weekly insertions in a newspaper, the first of which may be less than 28 days before the introduction of the bill required to be advertised. In *Ensley v. Simpson,* 166 Ala. 366, 59 South. 61, an affidavit that the bill had been "duly published in the Ensley Herald at least once a week for 4 consecutive weeks" prior to the date of the affidavit was accepted as a compliance with the Constitution. That form of proof was assailed as insufficient, because it was a mere conclusion of the affiant. This court, responding to the contention made, said: "If publication begun at least 4 weeks in advance of the introduction of a bill is the only publication which complies with the language of the Constitution, requiring publication for 4 consecutive weeks, the meaning of the language of the affidavit must be that publication was begun at least 4 weeks before the bill at issue was introduced. The Legislature in the discharge of its sworn duty so interpreted the affidavit; that interpretation was not strained, forced, or unnatural, and we will not say that there was a breach of constitutional duty in so accepting it." The decision in that case does not help the decision of the case at bar; for here, in addition to the so-called conclusion, we have also a statement of the exact dates on which publications were made; and, of course, the more particular statement must control the more general. We hesitated in that case to adopt the opinion now entertained and expressed out of deference to what was supposed to be the effect of the opinion of the Supreme Court of the United States, in the case of *Early*

*v. Homans,* 16 How. 610, 14 L. Ed. 1079, to which we will refer again. We think now that it may be said to be probable that the first Legislature to sit after the adoption of the present Constitution, in which there sat a number of distinguished lawyers and others who had taken part in framing that instrument, construed the provision in question to mean no more than that before a bill is introduced there must be at least one insertion in each of 4 consecutive weeks. Thus, in *Ex parte Black,* 144 Ala. 1, 40 South. 133, the legislative history of the act there under consideration shows that the bill was introduced on the 9th day of February, 1903. The proof upon which the Legislature acted shows that notice of the bill had been published "regularly in 4 weekly issues" of a weekly newspaper prior to the date of the affidavit, which was made on February 7th. The court was unanimous to the conclusion that these words meant that the notice had appeared "consecutively for 4 weeks," and that it was sufficient. Similar proof of a similar publication was accepted in *Dudley v. Fitzpatrick,* 143 Ala. 165, 39 South. 384, and *Childers v. Shepherd,* 142 Ala. 390, 39 South. 235, in each of which cases the bills were introduced on the day after the affidavit of publication was made; and the same legislative interpretation of the Constitution appears to have obtained in a number of instances in which the acts have not found their way into the courts. There is, however, nothing in the legislative history of the acts involved in those cases conclusively showing a legislative interpretation, which could only be persuasive of the true interpretation, nor in the decision to which we have referred; for it does not certainly appear that either the Legislature or the court had their attention drawn with inescapable particularity to the precise question here raised.

At the time of the adoption of the Constitution, there was a difference of judicial opinion as to just what was meant where notice was required to be given by publication once a week for a number of consecutive weeks before a certain event, as, for familiar example, in the advertisement of a sale under a power in a mortgage, where, of course, the sale must be advertised to occur on a day fixed. Perhaps a majority of the courts held that a notice required to be published for a given number of weeks successively was sufficient, if published once in each week for the required number of weeks, though the number of days from the first publication to the day of sale was not equal to the number of days in that number of weeks.—2 Jones on Mortgages, § 1838; *Hoffman v. Anthony,* 75 Am. Dec. 708, note. We do not find that the question had ever been decided in this court. Because of this uncertainty, no doubt, it had been provided by statute that: "When the notice is required to be given for a specified number of weeks, it must be given by consecutive weekly insertions for the number of weeks so specified"—the point of which was to require that publications must be made in consecutive weeks, and not intermittently. "And the notice is of a proceeding to be had or of an act to be done on a specified day　*　*　*　if for four weeks, the first insertion must be at least twenty-four days before such day."—Code 1896, § 3043; Code 1907, § 5184. This provision of the statute dealt only with notice by weekly publications in newspapers, and in terms was limited to cases of proceedings to be had or acts to be done on specified days. It was not conceived with the purpose of defining the publication of notice in respect of a proceeding which might be had or an act which might be done at any time, within reasonable limits, after the completion of the notice required. It

cannot, therefore, be taken as a legislative definition of the constitutional phrase prescribing notice of the introduction of local bills, the exact time of which no man can control or foresee. The proper interpretation of the constitutional provision is thus left to be determined upon consideration of the language used. The collection of words in question, having acquired, as it seems, no fixed meaning in the construction of Constitutions or laws, is to be taken to mean what the framers of the Constitution and the people to whom the Constitution was proposed for adoption may be reasonably presumed to have understood it to mean. They did not indulge in the refinements to which the courts are sometimes driven. They looked at the phrase requiring newspaper publication as a whole, and adopted its most obvious and natural meaning, which was, according to our opinion, that in each of four consecutive weeks there must be at least one insertion. This publication must, of course, be completed prior to the introduction of the bill.

Appellant puts much store by *Finlayson v. Peterson*, 5 N. D. 587, 67 N. W. 953, 33 L. R. A. 532, 57 Am. St. Rep. 584. In that case the language of the statute was that notice must be given "by publishing the same for six successive weeks at least once in each week." It was held that nothing short of a publication for 42 days would satisfy its requirement. It will be observed that the statutory phrase considered in that case, like the corresponding phrase employed in our Constitution, is separable into two members, and that the order of their statement in our Constitution and the North Dakota statute is inverted. The inversion seems to change the point of emphasis and the meaning. The court in that case conceded that, "if the statute had declared that the notice should be published once a week in each of 6 suc-

cessive weeks, its meaning would have been different,"
thus placing the entire burden of the opinion upon the
word "for," and assigning to that word in all such col-
locations the unchangeable implication of absolute du-
ration. But we think it has appeared that in such con-
nections the word may appropriately express a differ-
ent idea, and so we are unable to accept the decision as
conclusive of the question at issue.

Appellant relies also, with apparent confidence, upon
*Early v. Homans, supra,* and we find the decision in
that case cited in a number of cases, more or less sim-
ilar, as sustaining his view in a general way. That case
related to the notice of a sale for taxes. The court was
evidently inclined to a strict construction in favor of
the property owner. The statute required publication
"once in each week, for at least twelve successive
weeks." There is some ambiguity in the court's dis-
cussion of the question, and we think, upon more care-
ful consideration, that the case has been misunderstood.
In fact, we think that in general effect it is an author-
ity for our view. It is clear beyond controversy that
the decision was controlled by the words "at least,"
which, in the statute in that case, were so located as
to determine the minimum lapse of time between the
first publication and the sale, rather than the minimum
of insertions, as is clearly the purpose of the same
words in the case at hand. "We do not doubt," says
the court, "if the statute had been 'once in each week
for 12 successive weeks,' a previous notice of the partic-
ular day of sale having been given to the owner of the
property, that it might very well be concluded that 12
notices, in different successive weeks, though the last
insertion of the notice for sale was on the day of sale,
was sufficient. But when the Legislature has used the
words 'for at least twelve successive weeks,' we cannot

doubt that the words 'at least,' as they would do in common parlance, mean a duration of the time that there is in 12 weeks, or 84 days." The court does observe that the other construction would leave out of consideration the effect of the words "for at least"; that, commonly used, the preposition "for" means of itself duration, when put in connection with time; and that the force of the words "for at least" is not qualified or lessened by the words "once a week," which precede them in the statute. But they say explicitly that they do not doubt that if the language of the statute had been "once in each week for 12 successive weeks" the notice would have been good, though 84 days had not elapsed. We are unable to see how the phrase "once in each week for 12 successive weeks" can be distinguished on any substantial ground of construction from "once a week for 12 successive weeks," or from "once a week for four consecutive weeks," which last is the language of our Constitution.—*Morrow v. Weed,* 4 Iowa, 77, 66 Am. Dec. 122. An interesting discussion of the question involved, and of the decision in *Early v. Homans,* may be read in *State of Nevada v. Yellow Jacket Co.,* 5 Nev. 415, where it was held that a statute requiring newspaper publication "once a week for three weeks" was satisfied by three insertions upon three successive weeks.

Perhaps we have already dwelt upon this question at unnecessary length. The statutes which have been the subject of construction in the many cases have differed among themselves in phraseology, and there is a singular confusion in the cases. After consideration, we are of opinion that the framers of the Constitution and the people, to whom the language of the Constitution was addressed when that instrument was proposed to them for adoption, intended and understood that

the requirement of publication for "at least once a week for four consecutive weeks" meant one publication in each of 4 consecutive weeks, rather than a publication for 28 days. Our conclusion is, therefore, that the act establishing the Birmingham court of common pleas was constitutionally passed, and the judgment of the Court of Appeals is affirmed.

Affirmed. All the Justices concur.